IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

———————————————————————

LUIS MEJIA,

                    Plaintiff,

          -v-                                    Civil Action No.
                                                 9:03-CV-124 (LEK/DEP)

GLENN S. GOORD, *et al.*,

                    Defendants.

———————————————————————

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

Luis Mejia, *Pro Se*

FOR DEFENDANTS:

HON. ELIOT SPITZER                    KELLY L. MUNKWITZ
Attorney General of the State         Assistant Attorney General
of New York
Attorney for Defendants
Department of Law
The Capitol
Albany, New York   12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

          Plaintiff Luis Mejia, a New York state prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging violation of his constitutional rights by the Commissioner of the New York State Department of Correctional Services ("DOCS") and several of the agency's employees. In his complaint, plaintiff seeks to hold the defendants accountable under the Eighth and Fourteenth Amendments for alleged indifference to his serious medical needs, based upon their failure to provide him with an adequate low fat diet recommended for his coronary artery disease and a refusal to transfer him to a facility which could better accommodate his dietary needs.  Among the relief sought by the plaintiff is a mandatory injunction directing the DOCS to transfer him to another facility and recovery of $65 billion in compensatory damages.

Currently pending before the court is a motion by the defendants seeking the entry of summary judgment dismissing plaintiff's complaint on several grounds, urging both procedural and substantive deficiencies including, *inter alia*, plaintiff's failure to state a meritorious claim under the Eighth Amendment, and neglect to exhaust available administrative remedies before commencing this action.[1]  Because the record now

---

[1]      In their motion defendants further claim entitlement to qualified immunity. In light of my recommendation on the merits, I have not separately addressed the

2

before the court fails to disclose the existence of any genuine, triable

issue of material fact and establishes, as a matter of law, that plaintiff has

suffered no cognizable constitutional deprivation, I recommend that

defendants' motion be granted.

I.    BACKGROUND

The plaintiff, who is currently an inmate at the Mt. McGregor

Correctional Facility, was incarcerated at the Washington Correctional

Facility ("Washington") at the times relevant to his claims.  Defendants'

Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 1.  Mejia alleges, and defendants

acknowledge, that he suffers from coronary artery disease, a condition for

which he received considerable treatment during his period of

incarceration at Washington by both DOCS medical personnel and

---

qualified immunity issue. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001).

Defendants also challenge plaintiff's request for injunctive relief in light of his intervening transfer to another facility.  Defendants argue that the transfer renders plaintiff's claim for prospective relief moot, arguing that since no officials at plaintiff's new prison are named as defendants, the issuance of injunctive relief cannot vindicate the constitutional rights now at issue.  While there is some appeal to this argument, the involvement of Commissioner Goord and Deputy Commissioner Dr. Wright, who presumably would be positioned to insure that plaintiff receives a proper diet at the new facility, as defendants in the action makes an award of prospective injunctive relief at least potentially meaningful.  In light of my ruling on the merits, however, I have also chosen not to address defendant's mootness argument.

outside specialists.[2] Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶¶ 4-5; Spitzer Aff. (Dkt. No. 29) ¶¶ 7,9,18.

Included among the treatment regimens afforded to Mejia while at Washington were a cardiac catheterization, performed in April of 2002, and a percutaneous intervention in May, 2002; both of those procedures were unsuccessful.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 6; Spitzer Aff. (Dkt. No. 29) ¶¶ 7, 9.  Following those failed undertaking one of plaintiff's cardiac specialists, Dr. Robert J. Capone, recommended that Mejia follow a low fat diet.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 6; Spitzer Aff. (Dkt. No. 29) ¶¶ 8,9.  Dr. Capone did not, however, prescribe a specific diet for the plaintiff.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 7; Spitzer Aff. (Dkt. No. 29) ¶ 9.

Under DOCS policies, inmates are provided with therapeutic diets when prescribed by a healthcare provider.[3]  Defendants' Rule 7.1(a)(3)

---

[2]    Plaintiff's complaint is on its face limited to issues involving his menu and prior transfer request.  Plaintiff's complaint does not appear to allege, nor does the record disclose evidence to suggest, that defendants were deliberately indifferent by failing to provide adequate medical care and treatment for his coronary condition.

[3]    The therapeutic diets made available to at Washington, which houses an average of 850 inmates at any given time, include a diabetic diet; a low cholesterol, low saturated fat diet; a low sodium diet; a low potassium diet; a gluten sensitivity diet; a high fiber diet; a low fiber/low residue diet; and a lactose intolerant diet.  Walker Aff. (Dkt. No. 29) ¶ 10.

4

Statement (Dkt. No. 29) ¶¶ 8-9; Walker Aff. (Dkt. No. 29) ¶¶ 7,9.  Inmates

at Washington who are placed on restricted diets are monitored for

noncompliance, since strict adherence is considered necessary to achieve

the goals of a prescribed diet.  Defendants' Rule 7.1(a)(3) Statement (Dkt.

No. 29) ¶ 15; Walker Aff. (Dkt. No. 29) ¶ 6.

Because therapeutic diets do not provide the same number of meal

options as those ordinarily available in general population, inmates

commonly opt out of a prescribed dietary program; accordingly, prison

officials often find it more effective, in meeting unique dietary needs, to

educate a particular inmate on making healthy selections from the general

population diet.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶¶

10-13; Spitzer Aff. (Dkt. No. 29) ¶ 9; Walker Aff. (Dkt. No. 29) ¶ 9.

Although inmates who suffer from coronary heart disease may eat

safely from the general population menu, provided they make intelligent

dietary intake choices, at his request plaintiff was placed on a low fat/low

cholesterol diet on June 3, 2002.  Defendants' Rule 7.1(a)(3) Statement

(Dkt. No. 29) ¶ 14; Spitzer Aff. (Dkt. No. 29) ¶ 11.  As a result of plaintiff's

failure to adhere faithfully to the restrictive diet, however, despite

counseling on or about July 18, 2002, he was removed from the diet on

February 21, 2003.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶¶

16-17; Spitzer Aff. (Dkt. No. 29) ¶¶ 11,13.  Mejia was later returned to the

restrictive diet on March 27, 2003, and remained on it until his transfer out

of Washington.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶¶ 18-

19; Spitzer Aff. (Dkt. No. 29) ¶¶ 13,15; Walker Aff. (Dkt. No. 29) ¶ 12.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on January 29, 2003.  Dkt. No. 1.

Named as defendants in Mejia's complaint are Glenn S. Goord,

Commissioner of the DOCS; Dr. Lester Wright, Commissioner of Health

Services for the DOCS; and several DOCS employees assigned to work

at Washington, including Deputy Superintendent of Administration Alfred

Roberts; Food Services Administrator Francis A. Steinback; Dana Griffith,

Administrator and Head Nurse; Dr. Samuel Richard Spitzer, a prison

physician; and Correctional Counselors Phillip Dwyer and Norman

Vadnais. Complaint (Dkt. No. 1) ¶ 3.

Following the joinder of issue and completion of pretrial discovery,

on August 31, 2004 defendants moved seeking the entry of summary

judgment dismissing plaintiff's complaint in its entirety.  Dkt. Nos. 29-31.

In their motion, *inter alia*, defendants assert that plaintiff cannot establish

either the existence of a serious medical need or defendants' deliberate indifference to any such need.  Defendants also challenge plaintiff's assertion of their personal involvement in the constitutional violations alleged, and claim that plaintiff has failed to comply with requirements of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), including by his failure to exhaust administrative remedies before commencing suit.  Submissions by the plaintiff in opposition to defendants' motion were filed on September 29, 2004, Dkt. No. 32, and defendants have since submitted a reply memorandum addressing certain of the arguments raised in plaintiff's opposition papers as well as pointing out their procedural deficiencies, Dkt. No. 33.

Defendants' summary judgment motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Plaintiff's Failure To Comply with Local Rule 7.1(a)(3)

While the plaintiff has actively opposed defendants' summary judgment motion, in addition to his failure to supply the court with an

affidavit controverting the assertions set forth in defendants' submissions he has not responded to defendants' statement of material facts not in dispute, as required by Northern District of New York Local Rule 7.1(a)(3). The first issue to be addressed is the legal significance, if any, of this failure to comply with the requirements of Local Rule 7.1(a)(3).

The potential consequences of plaintiff's failure to respond to defendants' Local Rule 7.1(a)(3) Statement and, by doing so, to assist the court in determining what material facts are genuinely disputed, are significant.  By its terms, Local Rule 7.1(a)(3) provides that "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).  Courts in this district have not hesitated to enforce Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts admitted upon an opposing party's failure to properly respond.  *See, e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).

Based upon the foregoing, and notwithstanding plaintiff's *pro se*

8

status, I recommend that the court accept defendants' assertions of fact, as set forth in their Rule 7.1(a)(3) Statement, as uncontroverted.[4]

B.    Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the nonmoving party's claim.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4.  Once that burden is met, the opposing party must show, through affidavits or otherwise, that there is a material factual issue for trial.[5]  Fed. R. Civ. P.

_____

[4]    Defendants' notice of motion pointedly advised Mejia of the requirements of Local Rule 7.1(a)(3) and the consequences of failing to respond to their Rule 7.1(a)(3) Statement.  *See* Dkt. No. 29.

[5]    A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. When deciding a summary judgment motion, the court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

### C.   Failure to Comply with the Prison Litigation Reform Act

#### 1.   Failure to Exhaust Administrative Remedies

_____One prong of defendants' PLRA argument addresses the insufficiency of plaintiff's efforts to avail himself of the internal DOCS grievance process before filing this action. Defendants' motion is based upon the fact that in his complaint Mejia asserts that while he appealed an apparently adverse local determination of a grievance filed regarding the matters now in dispute to the Central Office Review Committee ("CORC"), he had not received a response to that appeal as of the time his complaint

---

*Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

was prepared.  Complaint (Dkt. No. 1) ¶ 18.  Defendants assert that the

shortcoming is fatal, and should result in dismissal of Mejia's complaint

based upon his failure to exhaust administrative remedies.

The PLRA altered the inmate litigation landscape considerably,

imposing several restrictions on the ability of prisoners to maintain federal

civil rights actions.  One such restriction introduced by the PLRA requires

that "[n]o action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined

in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The

Supreme Court has held that the "PLRA's exhaustion requirement applies

to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive

force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122

S.Ct. 983, 992 (2002).

New York prison inmates are subject to an Inmate Grievance

Program established by the DOCS, and recognized as an "available"

remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV

5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v.*

11

*Johnson*, 351 F.3d 606 (2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The New York Inmate Grievance Program consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within fourteen days of the incident.[6]  7 N.Y.C.R.R. § 701.7(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  7 N.Y.C.R.R. § 701.7(a).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.7(b).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision.  *Id.* § 701.7(c).  Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

Against this backdrop, it is clear that plaintiff had not fully satisfied

---

[6]     The Inmate Grievance Program supervisor may waive the timeliness of the grievance submission due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.7(a)(1).

his PLRA exhaustion requirements until January 29, 2003, when the CORC unanimously denied his grievance.  *See* Plaintiff's Opposition Papers (Dkt. No. 32) Exh. C.  As a matter of sheer coincidence, it was on that same date that this action was filed, although plainly plaintiff was unaware of the CORC's determination at the time his complaint was framed and provided to prison officials for mailing to the court.

Given these circumstances, it is admittedly tempting to afford the plaintiff the benefit of the doubt, inasmuch as this action was technically commenced on a date when the PLRA's exhaustion requirements were satisfied.  To overlook plaintiff's failure to await the CORC's determination before deciding to commence the action, however, would undermine the important policy considerations underlying the exhaustion requirement, as recognized in such cases as *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).  Accordingly, I find that because plaintiff had not received, and thus was unaware of, the CORC's adverse determination prior to drafting and forwarding it to the court, his complaint in this action is barred by the administrative exhaustion requirements of the PLRA.

        2.   Physical Injury

The second element of defendants' PLRA defense is based upon

the requirement, codified in 42 U.S.C. § 1997e(e), that a prison inmate asserting a claim for mental or emotional injury suffered while in custody must make a showing of accompanying physical injury in order to recover compensatory damages.  Defendants contend that by his failure to prove a physical injury stemming from the matters now complained of, plaintiff may not maintain a claim for such damages for mental anguish and emotional distress.

42 U.S.C. § 1997e(e), a provision added by the PLRA, provides in relevant part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  Section 1997e(e) includes within its purview alleged constitutional violations.  *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2002); *Petty v. Goord*, No. 00 Civ.803, 2002 WL 31458240, at *8-*9 (S.D.N.Y. Nov. 4, 2002).

Under section 1997e(e), claims brought by inmates pursuant to section 1983 for emotional damages unrelated to any physical injury are subject to dismissal.  *Shariff v. Coombe*, No. 96 Civ. 3001, 2002 WL 1392164, at *4 (S.D.N.Y. June 26, 2002).  The absence of physical injury,

14

however, does not totally bar an inmate claim under section 1983, since section 1997e(e) does not preclude recovery of nominal damages, punitive damages, or declaratory or injunctive relief even in the absence of a showing of physical injury.  *Id.*, at *5 (citation omitted).

Defendants' claim that plaintiff cannot demonstrate the existence of physical injury flowing from the constitutional violations alleged in his complaint is, at least at this procedural juncture, problematic. Unquestionably – and defendants do not argue otherwise – plaintiff suffers from a serious and potentially debilitating medical coronary condition. Affording plaintiff the benefit of all inferences, as the court must at this stage, I am unable to conclude that the defendants' alleged failure to provide him with the low fat diet suggested by his coronary specialists did not result in physical injury, and that no reasonable factfinder could conclude otherwise.  Accordingly, I recommend that this portion of defendants' motion be denied.

D.    Merits of Plaintiff's Deliberate Indifference Claim

Plaintiff's complaint in this matter asserts defendants' deliberate indifference to his serious medical needs, in violation of his rights as

15

guaranteed by the Eighth Amendment to the United States Constitution.[7]

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102-103, 97 S.Ct. 285, 290 (1976) (citations and internal quotations omitted); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986) (citing, *inter alia*, *Estelle*). While the Eighth Amendment "'does not mandate comfortable prisons'", neither does it tolerate inhumane treatment of prisoners; thus, the conditions of an inmate's confinement, including medical care, are subject

---

[7]     In his complaint, plaintiff characterizes his claims as being asserted under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  While Title II of the ADA does apply to services, programs and activities operated in state prisons, *see Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 212, 118 S. Ct. 1952, 1956 (1998), the defendants named by the plaintiff in his complaint may not be sued personally in their individual capacities for violation of the ADA.  *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n.8 (8th Cir. 1999).  To the extent that plaintiff's complaint may represent his attempt to sue the named defendants, including particularly Commissioner Goord, in an official capacity, such allegations raise thorny questions regarding sovereign immunity.  *See, e.g.*, *Garcia*, 280 F.3d at 113 n.3; *see also Alsbrook*, 134 F.3d at 1007.  Since defendant's responsive papers focus upon analysis of plaintiff's claims under the Eighth and Fourteenth Amendments, and plaintiff does not appear to press his ADA claims in opposition to that motion, I have considered them as having been abandoned, and will not address them in more detail. In any event, the plaintiff's claims are not particularly well suited for Title II of the ADA, which merely prohibits the denial of access to and participation in services or programs, including in a prison setting.  *See* 42 U.S.C. § 13132.

to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832,

114 S.Ct. 1970, 1976 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337,

349, 101 S.Ct. 2392, 2400 (1981)).

  To succeed on a claim alleging that prison conditions, including

though not limited to medical care, violate the Eighth Amendment, a

plaintiff must satisfy both an objective and subjective requirement; the

conditions must be "sufficiently serious" from an objective point of view,

and the plaintiff must additionally demonstrate that prison officials acted

subjectively with "deliberate indifference."  *Farmer*, 511 U.S. at 834, 114

S.Ct. at 1977 (citations and internal quotations omitted); *see also Leach v.

Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing

*Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991)); *Waldo v. Goord*,

No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn,

J. and Homer, M.J.) (also citing, *inter alia*, *Wilson*).

  Undeniably, the Eighth Amendment's prohibition against cruel and

unusual punishment extends to the food provided to prison inmates.

While the Eighth Amendment does not elevate to constitutional

significance an inmate's dislike for the food served or the portions

received, *see*, *e.g.*, *Word v. Croce*, 169 F. Supp.2d 219, 226 (S.D.N.Y.

17

2001), it does require that prisoners be given "nutrionally adequately food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) (citations omitted), *cert. denied*, 450 U.S. 1041, 101 S. Ct. 1759 (1981); *see also Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citing *Ramos*).

Plaintiff does not contend, nor does the record support, that in general terms the diet made available to him and other inmates at Washington during the relevant time period fell below this constitutionally mandated floor, either qualitatively or quantitatively.  Instead, Mejia asserts that by failing to provide him with a special diet designed to address his coronary condition, defendants were indifferent to his medical needs.  Accordingly, plaintiff's Eighth Amendment claims must be reviewed under the more particularized standard applicable to such medical indifference claims.

### 1.    Serious Medical Need

In order to state a deliberate medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a

18

medical need which is, in objective terms, "'sufficiently serious'".

*Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501

U.S. at 298, 111 S.Ct. at 2324), *cert. denied sub nom.*, *Foote v.*

*Hathaway*, 513 U.S. 1154, 115 S.Ct. 1108 (1995).  A medical need is

serious for constitutional purposes if it presents "'a condition of urgency'

that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*,

143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical

need can also exist where "'failure to treat a prisoner's condition could

result in further significant injury or the unnecessary and wanton infliction

of pain'" – since medical conditions vary in severity, a decision to leave a

condition untreated may or may not be unconstitutional, depending on the

facts.  *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting*,*

*inter alia*, *Chance*).  Relevant factors in making this determination include

whether the plaintiff suffers from an injury that a "'reasonable doctor or

patient would find important and worthy of comment or treatment'", a

condition that "'significantly affects'" a prisoner's daily activities, or

"'chronic and substantial pain.'" *Chance*, 43 F.3d at 701 (citation omitted).

   Addressing this prong of the medical indifference test, defendants

assert that plaintiff has failed to establish a medical need for the diet for

which he now advocates.  In doing so, defendants conflate the serious

medical need and the deliberate indifference elements of the relevant

Eighth Amendment medical indifference standard.  The record in this case

is strongly suggestive of plaintiff's suffering from a coronary condition

which, though medically unspecified, could qualify as a serious medical

need.  Defendant's Rule 7.1(a)(3) Statement (Dkt. No. 29)¶¶ 4-5; Spitzer

Aff. (Dkt. No. 29) ¶¶ 7, 9, 18.  In my view, the lack of any nexus between

plaintiff's coronary condition and defendant's failure to provide him with

the requested low fat diet is more appropriately scrutinized under the

indifference prong of the governing test.

     2.    <u>Deliberate Indifference</u>

Deliberate indifference, in a constitutional sense, exists if an official

knows of and disregards an excessive risk to inmate health or safety; the

official must "both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also

draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*,

103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2

(same).

The record in this case fails to support plaintiff's claim of the

defendants' deliberate indifference to his allegedly serious medical needs. According to the record inmates who, like Mejia, suffer from coronary heart disease can eat safely from the general population menu, provided they make intelligent selections which take into account their medical condition.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶¶ 12-13; Spitzer Aff. (Dkt. No. 29) ¶¶ 9-10.  In light of the availability of suitable and healthy dieting choices on the general population menu, defendants have determined it to be more productive to educate inmates with such diseases on making healthy menu choices than to afford them particularized, limited diets.

     While, with proper discipline, the plaintiff was therefore able to satisfy his dietary needs with the general population menu, at his request he was placed on the low fat/low cholesterol diet on June 3, 2002, though he was later removed from it owing to his inability to adhere to the diet's rigid food intake requirements.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 14; Spitzer Aff. (Dkt. No. 29) ¶ 11.  After being off of the restricted diet for approximately one month, Mejia was returned to the requested low fat, low cholesterol diet on March 27, 2003, and remained on it until his transfer out of Washington.  Defendants' Rule 7.1(a)(3)

Statement (Dkt. No. 29) ¶¶ 17-18; Spitzer Aff. (Dkt. No. 29) ¶ 13.

Significantly, defendants' submissions establish, without contradiction, that Mejia suffered no ill effects from the diet provided to him while at Washington.  Throughout his stay at Washington, prison personnel continuously monitored plaintiff's LDL and cholesterol levels, which were found to be within the range of normal during the time period relevant to this claim.[8]  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 20-21; Spitzer Aff. (Dkt. No. 29) ¶ 15-16.  Notably, at no time did plaintiff's cardiac specialists prescribe drugs to lower his Low Density Lipoprotein ("LDL") level.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 22; Spitzer Aff. (Dkt. No. 29) ¶¶ 16-17.  According to Dr. Spitzer, a prison physician, plaintiff received proper medical care while at Washington, and did not suffer from a medical condition requiring his transfer to another prison facility.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶¶ 22-23; Spitzer Aff. (Dkt. No. 29) ¶¶ 16-17, 20.

---

[8]        Between 2003 and 2004, plaintiff's total cholesterol ranged from 160 to 184 mg/dl, with total cholesterol of less than 200 mg/dl being considered as normal. Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 20; Spitzer Aff. (Dkt. No. 29) ¶ 15.  During the same period, the plaintiff's LDL level, which is the most significant of the cholesterol subtypes, fluctuated between 83 and 98 mg/dl, again below the maximum of 100 considered as normal.  Defendants' Rule 7.1(a)(3) Statement (Dkt. No. 29) ¶ 21; Spitzer Aff. (Dkt. No. 29) ¶ 16.

This case is readily distinguishable from *Johnson v. Harris*, which involved an inmate with a serious diabetic condition, requiring a therapeutic diet, who had attempted unsuccessfully to eat safely from the general population menu, and at times was forced to forgo eating entirely as a result of the unavailability of menu choices consistent with his condition.  479 F.Supp. 333, 335-36 (S.D.N.Y. 1979).  In *Johnson* prison medical personnel, knowing that the plaintiff was not receiving the proper diet for his condition, nonetheless failed to undertake affirmative measures to ensure that he did not eat food that was harmful to his health.  *Id.* at 337.  Based upon that failure of prison medical officials to remedy this perceived deficiency, the court in *Johnson* properly found a violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  *Id.*

The case at hand more closely resembles the circumstances presented in *Rivera v. Dyett*, Nos. 88 Civ. 4707, 90 Civ. 3783, 1994 WL 116025 (S.D.N.Y. Mar. 28, 1994).  There the plaintiff, also a diabetic, could not demonstrate deliberate indifference on the part of prison officials to his serious medical needs where he failed to show that dietary teaching was an objectively inadequate alternative form of treatment, or that he

23

suffered any injury as a result of failure to be placed on a therapeutic diet. *Id.*, at *8.

Simply stated, plaintiff's claims in this action represent nothing more than his dissatisfaction with the initial decision of officials at Washington to educate him with respect to making healthy food choices from the general population menu, and to place him on the therapeutic diet menu that he was eventually offered, at his request.  It is well established, however, that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S.Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S.Ct. 828 (1992).  Diagnostic techniques and treatments are a "classic example of a matter for medical judgment", and medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).  Because plaintiff has failed to establish that defendants were subjectively indifferent to his serious

medical need, his Eighth Amendment indifference claim lacks merit.

    D.    <u>Personal Involvement</u>

      As an alternative ground for their request for the entry of summary judgment, defendants assert plaintiff's failure to establish the requisite level of personal involvement by each of the defendants necessary to sustain a claim against them.

    Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

    1.    <u>Commissioner Goord</u>

    Plaintiff's claims against defendant Goord appear to be premised in large part upon his position as a supervisor.  A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor –

there is no respondeat superior liability under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). "Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright*, 234 F. Supp.2d 352, 363 (S.D.N.Y. 2002).

Both plaintiff's complaint and the record in this case are completely devoid of any tangible connection between Commissioner Goord's actions and plaintiff's alleged injuries. *E.g.*, *Gill v. Mooney*, 824 F.2d 192, 196 (2d

Cir. 1987) (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same).  "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson*, 347 F.3d at 435 (citations omitted).  Plaintiff's claims against defendant Goord stem solely from his position as Commissioner of the DOCS, and are based purely upon Mejia's contention that defendant Goord should have known of the constituted violations alleged, or that they should have been "obvious".  Plaintiff's Opposition (Dkt. No. 32) at 7.  Accordingly, there is no basis for finding liability on his part for the acts complained of, thereby providing an alterative basis for dismissal of plaintiff's complaint as against defendant Goord.

        2.   <u>Doctor Wright</u>

     Plaintiff's allegations against Dr. Wright demonstrate a somewhat stronger basis for finding his involvement in the constitutional deprivations alleged by Mejia.  In his complaint, plaintiff intimates that he communicated with Dr. Wright, complaining of the matters set forth in his complaint, without receiving any response.  Complaint (Dkt. No. 1) ¶ 16.

27

This allegation, even if interpreted in a light most favorable to the plaintiff, however, is insufficient to implicate Wright's personal involvement in the constitutional violations alleged absent evidence – lacking in the record before the court – that defendant Wright reviewed and acted upon plaintiff's complaints.  *Johnson*, 234 F.Supp.2d at 363.

>    3.    Superintendent Rivera and Deputy Superintendent Roberts

Plaintiff alleges that he made requests for a medical transfer and for the provision of a proper diet while at Washington to Superintendent Rivera, who later referred those requests to Deputy Superintendent Roberts.  Superintendent Rivera's receipt of Mejia's letters and delegation of those letters to his subordinate provide insufficient basis to establish his personal involvement.  *Gates v. Goord*, No. 99 Civ. 1378, 2004 WL 1488405, at *8-*10 (S.D.N.Y. July 1, 2004); *Johnson*, 234 F.Supp.2d at 363-64; *see also Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995); *Garrido v. Coughlin*, 716 F.Supp. 98, 100 (S.D.N.Y.1989).  Deputy Superintendent Roberts, on the other hand, reviewed and responded to Mejia's letter as assigned by Superintendent Rivera, potentially implicating his involvement in any resulting constitutional violation.  *Johnson*, 234 F.Supp.2d at 363-64.

### 4.   Administrator/Head Nurse Griffith

Plaintiff's only claim against Dana Griffith, described by Mejia as administrator and head nurse at Washington, surrounds his allegation that according to defendant Griffith he was on "regional hold" and, accordingly, he could apply for transfer only to any facility within the designated region. Complaint (Dkt. No. 1) ¶ 11.  Since plaintiff does not make any allegation regarding Nurse Griffith's involvement in the decision-making process with regard to plaintiff's diet or medical transfer, these allegations are insufficient to implicate her in the constitutional violations alleged.

### 5.   Food Services Administrative Steinbach

In his complaint, plaintiff alleges that defendant Frank Steinbach is a regional DOCS dietician who met with him in August of 2002 and assured him that he would receive a proper diet.  Complaint (Dkt. No. 1) ¶ 17. While extremely skeletal, when interpreted in a light most favorable to the plaintiff and with all inferences drawn in his favor, I am unable to say that based upon this allegation no reasonable factfinder could conclude that defendant Steinbach was personally involved in the decision regarding plaintiff's dietary intake at Washington.  Accordingly, I recommend against dismissal of plaintiff's claims against this defendant on the basis of lack of

personal involvement.

### 6.   Corrections Counselor Vadnais

Plaintiff's complaint alleges that defendant Norman Vadnais, a corrections counselor, assisted him in preparing documents including those related to his request for a therapeutic diet and for a medical transfer.  There is no allegation, either in plaintiff's complaint or elsewhere, that counselor Vadnais had any role in making either of those decisions, or even the authority to participate in any such determination. As such, plaintiff's allegations regarding defendant Vadnais are insufficient to demonstrate his personal involvement in the constitutional violations alleged.

### 7.   Dr. Spitzer

Plaintiff's allegations regarding Dr. Spitzer's involvement in the matters set forth in his complaint surround the physician's alleged awareness of the deficiencies in his diet and the failure of prison officials to provide him with a special diet, as well as his refusal to intercede on his behalf.  Complaint (Dkt. No. 1) ¶ 6.  These allegations, if founded, could support a finding of liability on the part of defendant Spitzer. *Johnson v. Harris*, 479 F. Supp. at 336-37.

### 8.   Corrections Counsel Dwyer

Like those against defendant Vadnais, plaintiff's allegations against

defendant Dwyer, another corrections counselor at Washington, also

concern Dwyer's efforts to assist the plaintiff in requesting a medical

transfer and/or a proper diet.  *See* Complaint (Dkt. No. 1) ¶¶ 4-5.  Absent

any indication of defendant Dwyer's further involvement, including any

authority on his part to direct such a transfer or order such a diet, these

allegations are insufficient to establish his personal involvement and

constitutional violations alleged.

In sum, I recommend a finding that plaintiff's allegations against

defendants Goord, Wright, Rivera, Griffith, Vadnais, and Dwyer are

insufficient to implicate their personal involvement in the constitutional

violations alleged, but that the allegations against the remaining

defendants are sufficient to support such a finding.

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff's claims in this action stem from his dissatisfaction with the

initial decision of prison officials at Washington to educate him with

respect to making healthy choices from the general population menu to

meet the dietary needs associated with his coronary condition, his distaste

for the therapeutic diet which was made available to him at his request, and the refusal by DOCS officials to transfer him to another facility where his dietary needs could more palatably be accommodated.  Despite these complaints by the plaintiff, the record now before the court firmly establishes that the defendants were not deliberately indifferent to plaintiff's serious medical needs.  To the contrary, it appears that throughout his stay at Washington plaintiff received regular and meaningful health care, and prison officials there made reasonable and legally sufficient efforts to accommodate his dietary needs.  Plaintiff's medical indifference claims are therefore legally deficient, and should be dismissed as a matter of law.

In addition to being deficient on the merits, plaintiffs' claims are subject to dismissal upon the procedural basis of his failure to exhaust administrative remedies before commencing the action.  Plaintiff's claims against defendants Goord, Wright, Rivera, Griffith, Vadnais and Dwyer are also subject to dismissal on the independent basis of their lack of personal involvement in the constitutional violations alleged.

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for summary judgment

32

dismissing plaintiff's complaint (Dkt. No. 29) be GRANTED, and plaintiff's complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:      August 16, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\personal involvement\Mejia.wpd

33